RICHARDSON et al. v. GENERAL ASSEMBLY OF THE CHURCH OF THE LIVING GOD et al.　(No. 7649.)

(Court of Civil Appeals of Texas. Dallas. Jan. 6, 1917.)

1. RELIGIOUS SOCIETIES ⬤⟳25—INTERFERENCE —INJUNCTION.

In suit by the General Assembly of a church to restrain former preachers of a congregation from interfering with the congregation's use of its church property, evidence, although somewhat conflicting, held to conclusively show that defendants were so acting as to disturb the congregation by interfering with the affairs of the church as to its control and peaceful management.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 154–167; Dec. Dig. ⬤⟳25.]

2. RELIGIOUS SOCIETIES ⬤⟳4—INCORPORATION —ACQUIESCENCE.

Where a church was operating under a charter adopted by a large majority of its members and for some time acquiesced in by defendants, it had a right to proceed without interference from defendants, whether or not the provisions

━━━━━

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the charter were in accord with the ideas of defendants.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 3, 5–14; Dec. Dig. ☞4.]

Appeal from District Court, Henderson County; John S. Prince, Judge.

Suit by the General Assembly of the Church of the Living God and another against W. H. Richardson and another. From judgment for plaintiffs, defendants appeal. Affirmed.

W. R. Bishop and J. J. Faulk, both of Athens, for appellants. E. P. Miller, N. Frank Faulk, and W. L. Faulk, all of Athens, for appellees.

RAINEY, C. J. This is a suit by appellee the General Assembly of the Church of the Living · God and Charlie Chase against appellants W. H. Richardson and J. S. Pendleton, seeking to restrain "the defendants, or either of them, from further using or in any wise interfering with the plaintiffs' use and enjoyment of said property and premises." A writ of injunction was issued.

Appellants answered by general demurrer and various special exceptions, by general denial, and specially that appellant Richardson was a minister of the Church of the Living God; that he in 1905 organized and established a local church in Athens; that under his administration and work said church grew and rapidly increased in membership, so much so that they needed a place of worship, and in February, 1916, he and other members of said church bought the lot and built the house, and that the same was then and there dedicated exclusively for religious purposes; that the deed was made to Chas. Chase, Berry Miller, and Benny Boggess, as trustees for such church, to be held by them and their successors in office; that Richardson and Pendleton were members of said church and have been ever since in good standing; that defendants have the right to hold said church for the purpose of worship, and that plaintiffs are attempting to change and pervert said property to other and different uses than that for which it was intended when bought and paid for; that the procuring of the charter by the General Assembly was a cunningly devised scheme to take said property, etc., and that it was done without the consent of the Church of the Living God. It was further pleaded that defendants and those with them had the right to take possession and control said premises, etc.

A trial was had on the merits, and judgment was rendered in favor of plaintiffs upon peremptory instructions given by the court; the injunction was perpetuated and defendants restrained from occupying or attempting to occupy said church building, or interfering with plaintiffs' free use and enjoyment of the same in conducting the affairs of said church. From this judgment an appeal was taken.

## Conclusions of Fact.

The Church of the Living God is a religious organization of the negro race. Its church government is composed of a General Assembly and local congregations. The General Assembly holds annual meetings and consists of delegates and preachers from all the local churches, and was organized over 20 years ago. Local congregations in church affairs act in accordance with the rules of the General Assembly, which is similar to the Methodist Conference, or the Presbyterian Church in General Assembly or Synod. It appoints preachers for the local churches, usually respecting the nomination made by the local church.

The local church of the Living God was established in Athens about 10 years ago by the General Assembly of said church. The organization has been continuously kept up ever since; preacher and deacons selected annually in accordance with the rules and regulations of the General Assembly. The Rev. L. G. Snell was the local preacher for and during the year 1914, and was returned by the General Assembly for the year 1915. From December 22 to 27, 1914, the General Assembly of said church was in session at Greenville, Tex.; while in session there the Revs. W. H. Richardson and J. S. Pendleton, the defendants in this suit, now appellants, were called on, as were all other preachers, to settle with the General Assembly for all collections made by them during the church year, and to pay all back indebtedness. A resolution was passed that all failing to do so should be silenced. On this resolution being passed the two defendants, the Revs. Richardson and Pendleton, tendered their resignations, which were accepted, and they immediately left the General Assembly before it adjourned. Defendant Richardson came immediately to Athens, stating he had been sent by the General Assembly to start a revival meeting at Athens, that many of the other preachers were coming right on from the Assembly to assist in it, and that the Rev. Pendleton would arrive on the next day. The day defendant Richardson arrived, he preached that night, a collection was taken up for him; he then and there obtained the consent of the congregation present and one of the deacons to carry on the revival until the preacher and delegates should return from the General Assembly, and announced that the Rev. J. S. Pendleton would preach there in the church the next night (Monday). During Monday defendant Richardson went around, saw several members, among others, Deacon Blanton, and invited them out to hear Rev. Pendleton preach, saying they were going to have a business meeting that night and elect new officers. Rev. Pendleton came, Richardson being present, and, as announced, Pendleton preached. After preaching defend-

ant Pendleton asked all who were not members of the church to retire, saying that he was going to hold a business meeting and elect new officers, but Deacon Blanton protested, blew out the lights, and stopped the business meeting; the local preacher, Snell, some of the deacons and delegates to the General Assembly still being absent. On the next evening (Tuesday) the bell rang again, and the crowd turned out to the meeting. By this time the deacons and delegates had got back from the General Assembly, and Martin, the assistant local preacher for Athens, got up that night to preach, and defendant Richardson got up in the pulpit in front of him and said he (Richardson) was going to preach. The deacons tried to get Richardson to sit down; he would not, and they phoned for Sheriff Morrow, who went, found the congregation in an uproar, arrested Richardson standing in the pulpit in front of Preacher Martin. The sheriff said the crowd all seemed to be against Richardson. The assistant preacher (Martin) preached after Richardson was arrested and taken off. After preaching Martin announced he would preach there again the next night (Wednesday), and on Wednesday night both defendants, Richardson and Pendleton, were there sitting up in the pulpit. The meeting ran on all the week, Martin preaching, Richardson and Pendleton being there present. And every night after adjournment Richardson would announce that he would preach there the next -night. And one night in front of the church he halloed out loud that he was going to preach there the next night. One night during the meeting one of the deacons took a vote of the church on the question for all "who wanted to retain their preacher, Rev. Snell, and stand by the constitution of the church to stand up, and, after seating them, requested all that were opposed to stand up, and the vote stood 44 to 16 in favor of the church organization and retaining their preacher, Snell. The last night that Martin preached .Richardson still announced that he would preach there the next night and occupy the church, and they got the city marshal, Pinkerton, to keep order until they could get Judge Prince to grant an injunction. The night the city marshal was there is when they took the vote which stood 44 to 16. The deacons forbade Richardson and Pendleton preaching, and had to sue out an injunction to stop them. * * * On the 26th day of July, 1913, acting under appointment from the General Assembly, then being held in Marlin, Tex., several of the preachers, including the defendants, Richardson and Pendleton, drew up a charter incorporating the General Assembly; the purpose as set out in said charter was:

"For the protection of its property; organize and build church houses, chapels, auditoriums, and all other church edifices necessary for the dissemination and furtherance of the gospel truths and maintaining of orphanages and wid-ows' homes; purchase, own and hold all property bought, bequest or otherwise (under its corporate name) by any of its members or any person whomsoever; for maintenance of religious and charitable purposes; the said property shall forever be owned, controlled, and governed solely and exclusively for the purposes herein contained."

This document was forwarded to the secretary of state for his action. He returned it, saying the purposes did not comply with the statute referring the committee to subject 2, art. 642, R. S. (now subject 2, art. 1121, R. S.), which he said would designate the corporation for which they were praying. Acting on this suggestion the subcommittee immediately went before Ben M. Richardson, an attorney at law at Athens and a notary public, and' had him to draw the charter in accordance with the instructions from the honorable secretary of state. The purpose as made out by him under said section of the statute read as follows:

"The purpose for which it is formed the support of any benevolent, charitable, educational or missionary undertaking."

This was immediately on the 15th day of August, 1913, filed in the office of the secretary of state. In this charter is included the names of the two defendants, Richardson and Pendleton, as trustees, and this is the charter the church has been acting under ever since it was filed in the office of the secretary of state, August 15, 1913. The doctrines of the church were in no way changed, nor the church management, and the General Assembly went along meeting as it had before, each local church sending up its delegates and preachers as before, appointed to their respective charges. After the charter was issued in August, 1913, both defendants, Richardson and Pendleton, went right on and worked under it without complaint. After the charter was issued in August, 1913, a General Assembly was held right in Athens, a few months later in December, 1913, at which said charter was voted on and adopted, both defendants, Richardson and Pendleton, were present at said December, 1913, General Assembly and continued working under this charter until December, 1914, at Greenville, when they resigned after being called upon to make settlement of funds in their hands. The books of the local secretary of the local church at Athens show that there are 106 members, and secretary testified that 88 of that 106 members were for retaining the church organization as it was then being carried on and their preacher, L. G. Snell, and only 18 in favor of defendants and Richardson.

### Conclusions of Law.

[1] (1) The first assignment of error complains of the court for giving a peremptory instruction to the jury to find for the plaintiffs, contending that the testimony was conflicting, and that the evidence fails to show the acts which authorized the writ of injunction. There is some conflict in the tes-

timony of some of the witnesses on immaterial matters, but we are of the opinion that it conclusively shows that the defendants were so acting as to disturb the congregation by interfering with the affairs of the church as to its control and peaceful management. Plaintiffs had the right of possession of the property and a right to conduct their worship and control their affairs as they saw proper, without interference of defendants in any way. Richardson and Pendleton, although preachers, were not employed by the local congregation at Athens, nor were they acting under instructions of the General Assembly.

[2] (2) Whether or not the provisions of the charter were in accord with the ideas of the defendants we think immaterial. The local congregation had the right to proceed under the charter without interference from defendants, which it had agreed to do by a large majority of its members.

(3) There are numerous assignments of error and propositions submitted by appellants, which we have considered, but are of the opinion that after all the evidence is considered, none warrant a reversal of the case, and that a proper verdict has been rendered.

The judgment is affirmed.